AO 106 (Rev. 04/10) Application for a Search Warrant (USAO Rev. 12/20)

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| An American Security Products Safe, dark grey in color with an outward swinging door that opens from left to right, approximately 6' feet tall by 3' feet wide. | ) ) ) ) ) |

Case No. 2:23-MJ-5999

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy and Attempt to Distribute Controlled Substances |
| 18 U.S.C. § 922(g) | Prohibited Person in Possession of a Firearm |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

_____
/s/ Pursuant to Fed. R. Crim P. 4.1
*Applicant's signature*

Elizabeth Cardenas, Special Agent, Federal Bureau of Investigation
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state:  Los Angeles, CA

_____
*Printed name and title*

AUSA: Kenneth R. Carbajal (x3172)

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following item (the "SUBJECT SAFE"), seized on August 22, 2023, and currently maintained the custody of Long Beach Police Department, in Long Beach, California: An American Security Products Safe, dark grey in color with an outward swinging door that opens from left to right, approximately 6' feet tall by 3' feet wide.

**ATTACHMENT B**

I.  **ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1): Possession With Intent to Distribute Controlled Substances, 21 U.S.C. § 846: Conspiracy and Attempt to Distribute Controlled Substances, 18 U.S.C. § 922(g): Prohibited Person in Possession of a Firearm, and 18 U.S.C. § 924(c): Possession of a Firearm in Furtherance of a Drug Trafficking Crime (the "Subject Offenses"), namely:

2.    Any firearms, firearm parts, firearm accessories, and ammunition;

3.    Any narcotics, drug paraphernalia, scales, plastic baggies, ledgers, United States Currency in excess of $1,000 and pay owe sheets.

4.    Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

5.    With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

        a.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted;

        b.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as

evidence of the presence or absence of security software designed to detect malicious software;

       c.   evidence of the attachment of other devices;

       d.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

       e.   evidence of the times the device was used;

       f.   applications, programs, software, documentation, manuals, passwords, keys, and other access devices that may be necessary to access the device or data stored on the device, to run software contained on the device, or to conduct a forensic examination of the device;

       g.   records of or information about Internet Protocol addresses used by the device.

6.  As used herein, the terms "records," "information," "documents," "programs," "applications," and "materials" include records, information, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

7.  As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony

PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II. <u>SEARCH PROCEDURE FOR DIGITAL DEVICES</u>

8.   In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

b.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the scope of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of items to be seized.

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii.  The search team may use forensic examination and searching tools, such as "EnCase," "Griffeye," and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

c.    The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

d.    If the search determines that a digital device does not contain any data falling within the scope of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e.    If the search determines that a digital device does contain data falling within the scope of items to be

seized, the government may make and retain copies of such data, and may access such data at any time.

   f. If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the scope of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

   g. The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

   h. After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

   9. The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the

custody and control of attorneys for the government and their support staff for their independent review.

10. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

### AFFIDAVIT[1]

I, Elizabeth Cardenas, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of an application for a warrant to search the following item, in the custody of Long Beach Police Department, in Long Beach, California, as described more fully in Attachment A: An American Security Products Safe, dark grey in color with an outward swinging door that opens from left to right, approximately 6' feet tall by 3' feet wide (hereafter, the "SUBJECT SAFE"). The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. § 841(a)(1): Possession With Intent to Distribute Controlled Substances, 21 U.S.C. § 846: Conspiracy and Attempt to Distribute Controlled Substances, 18 U.S.C. § 922(g): Prohibited Person in Possession of a Firearm, and 18 U.S.C. § 924(c): Possession of a Firearm in Furtherance of a Drug Trafficking Crime (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

---

[1] The underlying case is assigned to Judge Terry Hatter under case number 23-00446-TJH. On November 14, 2023, the Government reached out to Judge Hatter's Court Clerk, Yolanda Skipper. Ms. Skipper instructed the Government to submit the search warrant to the Magistrate Judge on duty and not to Judge Hatter.

information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. **BACKGROUND OF AFFIANT**

3.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2019.  As an FBI agent, I am authorized to investigate violations of United States law and execute warrants issued under the authority of the United States.  I am currently assigned to the Violent Crime squad at the FBI Long Beach Resident Agency.  My training includes a wide array of investigative techniques, operational skills, firearms, tactics, case management, cybersecurity and interview and interrogation training.  My responsibilities include investigating violent street gangs, firearms and narcotics cases, armed bank robberies, crimes against children, extortion and kidnapping in the Central District of California.  I have also received specialized training and instruction related to these matters.

4.   As an FBI SA, I have participated in numerous federal and state investigations and, through my participation in these investigations, I have interviewed numerous witnesses, cooperating sources, and defendants.  During my time with the

FBI, I have executed numerous search warrants related to various crimes, including felon in possession of firearm cases.

### III.  <u>TRAINING AND EXPERIENCE ON DIGITAL DEVICES</u>[2]

5.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been

---

[2] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

used, what it has been used for, who has used it, and who has
been responsible for creating or maintaining records, documents,
programs, applications, and materials on the device.  That
evidence is often stored in logs and other artifacts that are
not kept in places where the user stores files, and in places
where the user may be unaware of them.  For example, recoverable
data can include evidence of deleted or edited files; recently
used tasks and processes; online nicknames and passwords in the
form of configuration data stored by browser, e-mail, and chat
programs; attachment of other devices; times the device was in
use; and file creation dates and sequence.

      c.   The absence of data on a digital device may be
evidence of how the device was used, what it was used for, and
who used it.  For example, showing the absence of certain
software on a device may be necessary to rebut a claim that the
device was being controlled remotely by such software.

      d.   Digital device users can also attempt to conceal
data by using encryption, steganography, or by using misleading
filenames and extensions.  Digital devices may also contain
"booby traps" that destroy or alter data if certain procedures
are not scrupulously followed.  Law enforcement continuously
develops and acquires new methods of decryption, even for
devices or data that cannot currently be decrypted.

     6.   Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I
know that it is not always possible to search devices for data

during a search of the premises for a number of reasons,
including the following:

        a.   Digital data are particularly vulnerable to
inadvertent or intentional modification or destruction.  Thus,
often a controlled environment with specially trained personnel
may be necessary to maintain the integrity of and to conduct a
complete and accurate analysis of data on digital devices, which
may take substantial time, particularly as to the categories of
electronic evidence referenced above.  Also, there are now so
many types of digital devices and programs that it is difficult
to bring to a search site all of the specialized manuals,
equipment, and personnel that may be required.

        b.   Digital devices capable of storing multiple
gigabytes are now commonplace.  As an example of the amount of
data this equates to, one gigabyte can store close to 19,000
average file size (300kb) Word documents, or 614 photos with an
average size of 1.5MB.

     7.   Other than what has been described herein, to my
knowledge, the United States has not attempted to obtain this
data by other means.

## IV. <u>SUMMARY OF PROBABLE CAUSE</u>

     8.   On August 22, 2023, Long Beach Police Department
("LBPD") Officers responded to a call reporting a white pickup
truck ("the White Pickup") blocking the caller's driveway on
Maine Avenue in Long Beach, California.  When the LBPD officers
arrived and approached the White Pickup, they saw a man -- later
identified as Adrian Flores ("FLORES") -- slumped over behind

the steering wheel.  FLORES appeared to be asleep or
unconscious.

9.   LBPD Officer C. Ignacio tapped on the driver's side
window of the White Pickup to try to wake FLORES up.  Once
FLORES woke up, Officer Ignacio asked FLORES to roll down his
window and to provide his driver's license.  FLORES rolled down
the window and, as FLORES reached towards his right
waistband/rear pocket area, Officer Ignacio heard a clicking
sound similar to a handgun being removed from a holster, or a
safety being released from a handgun.  At that point, Officer
Ignacio asked FLORES to put his hands on the steering wheel.

10.   After FLORES complied, Officer Ignacio walked around
the White Pickup to look for a license plate.  Upon returning to
the driver's side-door area, the officer observed what appeared
to be a firearm silencer between FLORES' thighs.  LBPD officers
then removed FLORES from the White Pickup to place him under
arrest.  While doing so, one of the officers noticed in plain
view a black semi-automatic firearm (the "Black Handgun") just
underneath the driver's seat and a matching magazine next to the
Black Handgun.  As the officers removed FLORES from the vehicle,
two cellular devices fell out of FLORES' lap.

11.   LBPD officers searched FLORES and found: a magazine
containing seven rounds of 9mm ammunition, and a Blackhawk
magazine pouch clipped onto his hip; an expanding baton and 2
glass pipes commonly used for smoking methamphetamine in his
jacket; and a counterfeit California Highway Patrol ("CHP")
badge in his pants pocket.

12.   LBPD officers then searched the White Pickup and found additional items, including: two high-capacity magazines containing 25 or more rounds of 9mm ammunition; and a Blackhawk handgun holster.

13.   After LBPD arrested FLORES on state charges, LBPD obtained a state search warrant for FLORES' residence and found evidence of suspected firearms and drug trafficking.  Inside FLORES' house, LBPD officers found 12 additional firearms, 6 suspected firearm silencers, a significant amount of ammunition, firearm smithing tools and parts, multiple plastic baggies containing suspected methamphetamine, and a digital scale.

14.   LBPD Officers also located the SUBJECT SAFE inside of a bedroom at FLORES' residence.



## V.  <u>STATEMENT OF PROBABLE CAUSE</u>

15.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.  LBPD Finds a Gun, High-Capacity Magazines, Ammunition, Suspected Silencer, and Two Cellular Devices on FLORES and in His Vehicle**

16.  Based on my review of law enforcement reports, photographs, and my conversations with Long Beach Police Detective A. Roberts, I am aware of the following:

a.  On August 22, 2023, Officer C. Ignacio responded to a call reporting the White Pickup blocking the caller's driveway on Maine Avenue in Long Beach, California. A records check of the vehicle showed it was registered to FLORES at 3057 Golden Avenue, Long Beach, California, 90806 ("Flores Residence"). Assisting LBPD Officers included C. Jackson, K. Skeen, and D. Weibe-Bailey.

b.  When the LBPD officers arrived and approached the White Pickup, they saw a man -- later identified as FLORES -- slumped over behind the steering wheel.  FLORES appeared to be asleep or unconscious.  Officer Ignacio tapped on the driver's side window of the White Pickup several times to try to wake FLORES up.  Eventually, FLORES woke up.

c.  Once FLORES woke up, Officer Ignacio asked FLORES to roll down his window and to provide his driver's license. FLORES rolled down the window and, as FLORES reached towards his right waistband/rear pocket area, Officer Ignacio heard a

clicking sound similar to a handgun being removed from a holster, or a safety being released from a handgun.  At that point, Officer Ignacio asked FLORES to put his hands on the steering wheel and requested backup.

       d.   While waiting for backup to arrive, the officer walked around the White Pickup looking for a license plate. Upon returning to the driver's side-door area, the officer observed what appeared to be a firearm silencer between FLORES' thighs.  Officers then removed FLORES from the White Pickup to place him under arrest.  While doing so, one of the officers noticed in plain view the Black Handgun -- a black Glock 19, 9mm semi-automatic handgun, bearing serial number YHH433, with a threaded barrel and tactical light -- on the driver's floorboard just underneath the driver's seat. The officer also saw a Glock magazine, containing 15 rounds of 9mm ammunition next to the Black Handgun.  In addition, as the officers removed FLORES from the vehicle, two cellular devices fell out of FLORES' lap.

       e.   Upon conducting a search incident to arrest of FLORES' person, officers found:

          i.   A Glock high-capacity magazine containing seven 9mm rounds of ammunition in a plastic holster on FLORES' hip;

          ii.   A Blackhawk magazine pouch, also on FLORES' hip;

          iii. A metal expandable baton in FLORES' right front jacket pocket; and

          iv.  A counterfeit CHP badge.

f.   When searching the White Pickup, prior to it being towed, LBPD officers also found a Blackhawk handgun holster, and two Glock high-capacity magazines, one of which contained 25 9mm rounds of ammunition and one of which contained 30 9mm rounds of ammunition.

**B.   LBPD Finds 12 Firearms, 6 Suspected Silencers, 10 Magazines, Ammunition, Firearm Tools and Parts, and Suspected Drugs in FLORES' Residence**

17.   Based on my conversations with LBPD officers, I am aware of the following:

a.   Following FLORES' arrest on state charges, LBPD officers obtained a state search warrant, case number LB235919, from the Honorable Judge of the Superior Court of California, Laura Laesecke, for FLORES' residence, which is attached hereto as Exhibit 1 and incorporated by reference. That warrant permitted search of any safe found at FLORES' residence. It expired on September 1, 2023.

b.   LBPD officers executed that search warrant on August 22, 2023, and in FLORES' bedroom and rooms attached to his bedroom found evidence of firearms manufacturing and trafficking including 12 firearms, 6 suspected silencers, 10 magazines, numerous rounds of ammunition, firearms parts, and gunsmithing tools.  LBPD officers also found evidence of drug trafficking including multiple plastic baggies containing suspected methamphetamine and a digital scale.  FLORES' sister, who also resides at the residence, identified FLORES' living space for LBPD officers, which included his bedroom and attached rooms in a converted garage.

10

      i.    Peace Officers present during warrant service included: Detectives A. Roberts, F. Archuleta, V. Vann, A. Aknin, S. Sorenson, H. Lizardo, C. Manis, S. Kim, B. Hearst, Officers D. Wiebe-Bailey, C. Kloss, and Sergeants R. Beach, G. Carrillo, and A. Fox.

      c.    LBPD officers found a magazine containing ammunition and two loose 9mm rounds of ammunition on FLORES' bed.

      d.    Near or under FLORES' bed, LBPD officers found:

      i.    An AR-15 style rifle, with an attached light and suspected silencer, loaded with a magazine containing ammunition, near the bed as depicted below;



        ii.   Two empty magazines, a 3D printed lower
receiver for a semi-automatic pistol, and a Dremel hand tool[3]
believed to be used in firearm gunsmithing located in a 4-
wheeled portable wagon at the foot of the bed; and

---

        [3] Dremel hand tools are commonly utilized during gunsmithing
to perforate, manipulate or remove firearm components primarily
made of polymer. This allows modifications of firearm receivers,
adds grip texture, and can be used to complete a Polymer 80
(commonly referred to as "Ghost Guns") internal components to
make it readily capable of receiving additional components
(primarily slides) to make it a complete and functional firearm.

iii. A round of 9mm ammunition underneath the bed.

e.    On the nightstand, LBPD officers found a suspected firearm silencer, parts commonly associated with silencers, and two empty magazines.

f.    In the bedroom closet, LBPD officers found:

i.    A Sporting Arms Company "Snake Charmer" .410 caliber rifle, bearing serial number 62429;

ii.   A bolt-action rifle, bearing letters HMN22 on the stock of the rifle;

iii. A Colt revolver;

iv.   Three suspected firearm silencers;

v.    Two rifle handguards, one pistol magazine, and one trigger mechanism; and

vi.   A large quantity of miscellaneous ammunition.

g.    Near the bedroom closet, LBPD officers also found:

i.    A revolver, bearing serial number B19666; and

ii.   A revolver, bearing serial number F558, missing its cylinder;

iii. A large quantity of miscellaneous ammunition; and

iv.   A single round of 9mm ammunition inside of a "Glock" brand box located underneath an ottoman near the closet.

h.   Along the walls of the bedroom, in the corners, and elsewhere in the bedroom, LBPD officers found:

i.   A Ruger .22 caliber rifle, bearing serial number 91993, with a suspected silencer;

ii.  A Glock 19 handgun, bearing serial number #XXE751 with an unserialized lower receiver;

iii. A Smith & Wesson revolver with wooden grips, missing its barrel;

iv.  A semi-automatic pistol frame and lower receiver of an AR-15 style rifle; and

v.   Numerous magazines, firearm accessories, spent firearms cartridges, and additional ammunition.

i.   LBPD officers also found, in the laundry room attached to FLORES' bedroom, a box of Winchester Ammunition and multiple gunsmithing tools.

j.   LBPD officers recovered evidence of drug trafficking in FLORES' bedroom, including multiple plastic baggies containing suspected methamphetamine, as well as a digital scale on the bed.

k.   LBPD Officers also located the SUBJECT SAFE. The SUBJECT SAFE is locked and controlled by a circular combination lock that also requires a key. There is a silver metal handle underneath the combination lock that can be utilized to pull the door open. LBPD Officers were not able to open the SUBJECT SAFE at the residence and, thereafter, transported the SUBJECT SAFE to the LBPD Property Warehouse located at 1400 Canal Avenue, Long Beach, CA.

l.   Once LBPD officers transported the SUBJECT SAFE to the LBPD Property Warehouse on August 22, 2023, LBPD employee G. Roberts attempted to open the SUBJECT SAFE once more. Amidst their attempts to open the SUBJECT SAFE, LBPD employees saw what they believed to be multiple firearms inside of the SUBJECT SAFE. The SUBJECT SAFE is partially pried open enough to see some of the inside contents. The SUBJECT SAFE has been securely stored at the LBPD Property Warehouse since August 22, 2023. In order to open the safe, officers will have to use breaching tools and potentially damage and/or destroy the safe and its locking mechanism. The purpose of this warrant is to permit search of the SUBJECT SAFE given that the state search warrant for FLORES'S RESIDENCE has expired.

**C.   FLORES Is a Convicted Felon**

18.   On August 22, 2023, I reviewed FLORES criminal history and learned that FLORES has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.   On or about May 25, 2017, a violation of California Penal Code 245(a)(4), Assault by Means Likely to Produce Great Bodily Injury, in the Superior Court for the State of California, County of Los Angeles, Case Number NA10562901;

b.   On or about March 27, 2014, a violation of California Penal Code 29800(A)(1), Possession of a Firearm by a Prohibited Person, in the Superior Court for the State of California, County of Los Angeles, Case Number NA09862501;

      c.   On or about March 27, 2014, a violation of California Health and Code 11379(A), Selling or Transporting Controlled Substance, in the Superior Court for the State of California, County of Los Angeles, Case Number NA09862501;

      d.   On or about September 9, 2005, a violation of California Penal Code 245(a)(2), Assault with a Firearm in the Superior Court for the State of California, County of Los Angeles, Case Number NA06481301; and

      e.   On or about February 13, 2004, a violation of California Penal Code 245(a)(1), Assault with a Deadly Weapon without a Firearm with Great Bodily Injury in the Superior Court for the State of California, County of Los Angeles, Case Number NA05791401.

**D.    Arrest of FLORES**

19.  On August 24, 2023, the Honorable U.S. Magistrate Judge Alka Sagar signed a criminal complaint and issued an arrest warrant for FLORES. That same day, law enforcement officers arrested FLORES at Los Angeles Sheriff's Inmate Reception Center and transported him to the Metropolitan Detention Center (MDC) in Los Angeles, California.

**E.    Indictment of FLORES**

20.  On September 7, 2023, FLORES was indicted by the Grand Jury for two counts of 18 U.S.C. § 922(g): Felon in Possession of a Firearm.

## VI. **CONCLUSION**

21.  For all of the reasons described above, there is probable cause to believe that the items to be seized described in Attachment B will be found in a search of the SUBJECT SAFE described in Attachment A.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
_____, 2023.


_____

UNITED STATES MAGISTRATE JUDGE

EXHIBIT 1

LBPD DR #: 230041279

# SUPERIOR COURT OF CALIFORNIA
## County of Los Angeles

# SEARCH WARRANT

**I (Officer Derek Bailey #11222)** swears under oath that the facts expressed by him in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he has probable cause to believe and does believe that the articles, property, electronic communications, and data described below are lawfully seizable pursuant to Penal Code Section 1524(a)(6), 18 USC § 2703(c), 2703(d), 3122, and/or 3123, as indicated below, and are now located at the location(s) set forth below.   Wherefore, Affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)

SEALING ORDER REQUESTED: ___ YES   X   NO
NIGHT SEARCH REQUESTED: ___ YES   X   NO

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF LOS ANGELES:** proof by affidavit, having been this day made before me by **(Officer Derek Bailey)**, finds that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by **X** (s) in that:

___ When the property or things were used as the means of committing a felony [§1524(a)(2) Penal Code];

__X__ When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony [§1524(a)(4) Penal Code];

___ Warrant issued to arrest a person [§1524(a)(6) Penal Code];

__X__ Will assist in locating an individual who has committed or is committing a felony [§1524(a)(12) Penal Code];

**LOCATION(S) AND AREAS TO BE SEARCHED: SEE ATTACHMENT A, HEREIN INCOPORATED BY REFERENCE.**

**FOR THE FOLLOWING PROPERTY/PERSON(S): SEE ATTACHMENT B, HEREIN INCOPORATED BY REFERENCE.**

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this Court, at the courthouse of this Court. This **Search Warrant and Affidavit**, and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this _22_ day of _Aug._ , _2023_ , at _13:30_ A.M. / **P.M.** Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____
(Signature of Magistrate)

SEALING ORDER APPROVED: ___ YES   X   NO
NIGHT SEARCH APPROVED: ___ YES   X   NO

Judge of the Superior Court of California, County of Los Angeles, _____
_____South_____ **Judicial District**

**LAURA LAESPOT**

Court. Dept. / Div. _19_

(Magistrate's Printed Name)

## ATTACHMENT A:

## YOU ARE THEREFORE COMMANDED TO SEARCH:

**Location #1:** 3057 Golden Avenue in the City of Long Beach, California. Including any living areas or garages, attached or unattached, trash receptacles, attics, basements, outbuildings, storage sheds or structures, which are rented, owned or connected in conjunction with the unit, and any vehicles under the dominion and control of the occupants. Also any safes, lock boxes, or storage compartments.

3057 Golden Avenue, located in the city of Long Beach, County of Los Angeles, state of California, is a single-story residence located on the west curb of Golden Avenue just north of Spring Street. The front door of the residence faces east and is brown in color. The numbers "3057" are white and just south of the door. The residence is tan in color with white trim and light brown colored roof. There is a large five foot by five-foot bay window with white trim that is covered by a brown awning on the northeast side of the house. There are four steps that are lined by red/white bricks that lead up to the front door. On the south side of the top step is a brick pilar connected to the roof of the house. To the north and south of the initial steps are a small planter beds lined by brick.

On the north side of the property is a driveway that is secured by a wrought iron fence that is gray in color. The driveway leads to a detached garage that is on the northwest corner of the property.

**Item #1:**
Black Samsung IMEI # – 356184990466783
sim card # 8901260998733180591

Item #1 is currently in the custody of Officer D. Bailey #11222 at 1835 Santa Fe Avenue, Long Beach, (County of Los Angeles) California 90810. Item #1 belongs to Adrian Flores DOB 04/11/80

## ATTACHMENT B:

## FOR THE FOLLOWING PROPERTY:

Cellular Phone/Computer Tablet Forensics from <u>February 22, 2023 to August 22, 2023</u>:

-All photographs stored in the cellular phones and tablet.

-All videos stored in the cellular phones and tablet.

-All text message (SMS/MMS) correspondence stored in the cellular phones and tablet.

-All incoming/outgoing emails as well as email contacts.

-All social media postings and data.

-All incoming and outgoing phone calls stored in the cellular phones and tablet and to include the following:

    -Cellular phone number(s) and ALL contacts.

    -All call detail records with cell site information and Instant Messaging Correspondence.

-All communications used by the device showing data, or collection of information stored by the device.

-Subscriber information and proof of ownership of the device.

-All Metadata

-All programs which shows a GPS (Global Positioning Satellite) location with a physical address.

-All programs and applications and data associated with them.

-iCloud/cloud data associated with device.


**(Technical Requirements)** Searching cell phone systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.   The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password protected, or encrypted files.   Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive codes imbedded in the system as a "booby - trap"), a controlled environment is essential to its complete and accurate analysis.  Many system storage devices require particular input / output devices in order to read the data on the system.   It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above.

In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any application software, which may have been used to create the data (whether stored on hard drives or on external media), as well as related instruction manuals or other documentation and data security devices (Return of Items). For these reasons this search warrant shall allow officers to recover all of the listed cell phone equipment and for a complete computer forensic search to be conducted at the police department.  This computer forensic search shall be conducted pursuant to this search warrant and may extend past the 10-day search warrant requirement, if necessary.

Investigating officers are authorized, at their discretion, to conduct an offsite search of the seized items for the property described.  Investigating officers and those agents acting under the direction of the investigating officers are authorized to access all data on the cellular device to determine if the data contains the items as described above.  If necessary, investigating officers are authorized to employ the use of outside experts, acting under the direction of the investigating officers, to access and preserve data on the cellular device.  Those items that are within the scope of this warrant may be copied and retained by investigative officers.

I also understand that in order to successfully complete a forensic extraction from a mobile device, it may be necessary to repair the device, replace the display screen, replace the chassis, replace the battery, and repair or replace switches and other components that are necessary to make the device operational. I also understand that it may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include, but are not limited to, brute force attack methods, third party proprietary services and methods and destructive and potentially destructive processes such as gaining root and/or Super user level access and employing methods such as JTAG, ISP-JTAG and chip-off in order to extract data.

The executing law enforcement officer(s) may enlist the aid of a law enforcement computer forensic laboratory and/or certified digital evidence examiner(s) in the searching, viewing, photographing, recording, copying, forensic imagining, and analysis of all of the information described.

**IT IS FURTHER ORDERED,** that, pursuant to **Penal Code § 1546.1 (e) (2),** any information obtained through the execution of this warrant or order that is unrelated to the objective of the warrant be

destroyed as soon as feasible after the termination of the current investigation and any related investigations or proceedings.

**FIREARMS RELATED ITEMS:** Any and all articles relating to firearms including rifles, handguns, shotguns, illegal weapons, destructive devices, spent casings, bullet projectiles, bullet fragments, holsters parts of and containers for such firearms, as well as cleaning equipment, target, bullets, cartridges, primers, gunpowder, reloading equipment, firearm storage devices, safes, gun safes, gun-locking devices, lock-boxes security drawers, documents such as receipts related to the purchase, sale or transfer, possession and repair of a firearm or firearm related items. Officers are directed to gain access to any safes or lock boxes to obtain evidence.

**ARTICLES OF DOMINION AND CONTROL:** Articles of personal property tending to establish the identity of persons in control of these premises and/or vehicles. Such items may include, but not limited to: cellular phones, personal computers, laptops, cameras, utility bills, telephone bills, photographs, rental receipts, mortgage receipts/statements, sales receipts, tax statements, payroll check stubs, safes, keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door keys, trunk keys, vehicle ownership certificates or "pink slips", vehicle registration slips, and or keys and locks or padlocks showing control and access to premises or storage lockers. Officers are directed to gain access to any safes or lock boxes to obtain evidence.

**DRUGS:** Controlled substances and paraphernalia commonly associated with the smuggling, sales, packaging, storage and preparation of Controlled substances, consisting in part of and including, but not limited to:  packages of controlled substance, packaging materials, scales, and other weighing devices, chemicals, cutting agents and concealment devices. Other controlled substances, such as: methamphetamine, heroin, fentanyl, pills (prescription and counterfeit), concentrated cannabis, GHB,

MDMA, hallucinogens, or any analogs of scheduled controlled substances. Officers are directed to gain access to any safes or lock boxes to obtain evidence.

**MONEY:** Money, money counting machines, money wrappers, and/or work sheets, tally sheets or ledger sheets reflecting or accounting for money received, disbursed or exchanged. Also, monies or valuable items obtained from the sales of controlled substances, including stolen property, jewelry and firearms.  Any and all records of bank accounts, including cancelled checks, other records of income and expenditures, property acquisition records, money market accounts or similar accounts; records of stocks or bonds purchased or exchanged; credit card records, records of vehicles, aircraft or vessels owned, purchased, sold, rented or leased.  Federal and state tax returns and employment papers. Officers are directed to gain access to any safes or lock boxes to obtain evidence.

**ELECTRONIC DEVICES:** Also, any personal computers, automated data processing systems, or sub systems, or electronic diaries located therein, whether found on paper in handwritten, diskettes, optical storage devices, or any other medium, an any personal computer, consisting of a monitor, key board, central processing unit, and printer, and all compatible floppy or fixed disk drives, tape or optical drives, publications or notes necessary to access any of the above records.  Officers are directed to access this computerized information that may be stored for the purpose of identifying co-conspirators and obtaining additional evidence related to this case. Also, any communication devices, such as:  cellular telephones, other telephones, radios, fax machines, telephone answering devices or machines, and any recording tapes located therein. Officers are directed to gain access to any safes or lock boxes to obtain evidence.

# STATEMENT OF PROBABLE CAUSE:
## Statement of Expertise
## Affiant Statement

Your Affiant, Derek Bailey, is a Police Officer for the city of Long Beach Police Department and has been employed as a sworn Police Officer for the last 5 years. Your affiant is currently assigned to West Division Patrol under the Directed Enforcement Team, mainly responsible for calls for service and criminal investigations. As a Patrol officer, Your Affiant has contacted and investigated over 1,000 citizens for various crimes throughout his career. Your Affiant has conducted numerous in-depth investigations regarding gangs, shootings, robberies, assaults, vandalisms, thefts, narcotics, murders, traffic collisions, human sex trafficking and other criminal cases. Your Affiant has developed expertise in the daily operation of his job through personal observations and contacts with victims, suspects, and witnesses of such crimes.

Your Affiant has received over 1080 hours of training and instruction from the Long Beach Police Academy certified through the California Police Officer Standards and Training (P.O.S.T.). The instruction included formal blocks of training encompassing criminal investigations, crime scene investigations, judiciary law, and statutory law. Additionally, Your Affiant holds a Bachelor of Arts Degree in Journalism Master's Degree in Sport Management, both from California State University, Long Beach

Your Affiant has written, prepared, scouted, served, briefed, and or participated in multiple searches and arrest warrants throughout his career. I receive, on an ongoing basis, training in various laws, regulations, and techniques related to my employment as a POLICE OFFICER

## STATEMENT OF PROBABLE CAUSE:

On 08/22/23 Your Affiant, while working uniformed patrol as Unit 4B33 assisted Unit 4B5 (Officer C. Ignacio #5883) in the area of 2781 Maine Avenue regarding an Assist Fire for a person asleep in their vehicle (White pickup truck unknown plate) blocking a driveway (Call #389).

It should be noted, Your Affiant is assigned to West Directed Enforcement and were driving a marked black and white patrol vehicle equipped with solid forward facing red light, alternating red and blue lights, siren, and push bar. Your Affiant was wearing a standard issued Long Beach Police Department uniforms including but not limited to Shoulder patches, Badges, Name tag, and duty belt.

While en route to the call, Officer Ignacio aired via his departmental radio that he needed a unit to assist. Unit 4B1 (Officer C. Jackson # 11093) assisted. Shortly thereafter, Officer Ignacio aired that he was code-4 with one subject (later identified as ARR Adrian Flores DOB 04/11/80) in custody.

Upon arrival, your Affiant observed Flores handcuffed and seated in the backseat of a patrol vehicle. Officer Ignacio informed your Affiant of the following:

Upon approaching Flores vehicle (02 White Chevrolet S-10 CA# 59713N3), Officer Ignacio observed Flores slumped behind the steering wheel of the vehicle. Officer Ignacio woke up Flores and asked him to roll down the window. Flores complied. Officer Ignacio asked Flores for his identification. Flores took his right hand and reached to the right side of his hip. After completing this action Officer Ignacio heard a "clicking sound". Officer Ignacio informed your Affiant that based on his training and experience he believed the clicking sound to be that of a firearm being removed from a retention holster.

Officer Ignacio then observed what appeared to be a black cylindrical metal object in Flores's lap. Upon further inspection, Officer Ignacio observed threading on one end of the cylinder, leading him to believe that the item that was in Flores's lap was a "firearm silencer".

Officer Ignacio aired via his departmental radio for a Unit to assist and Officer Jackson assisted. Officer Ignacio removed Flores from the vehicle. As he was completing this action, he observed in plain view a black semi-automatic firearm (Black Glock 19 9MM Serial #YHH433) with a threaded barrel and tactical mounted "Streamlight" just underneath the front driver's seat. The firearm's barrel was pointed towards the driver side door. Just above the firearm was a loaded high-capacity black Glock magazine containing fifteen 9MM rounds.

Officer Ignacio handcuffed Flores, double locking them and checking them for fit. Officer Ignacio conducted a pat down search incident to arrest upon Flores's person. Officer Ignacio discovered another loaded high-capacity black Glock magazine containing seven 9MM rounds in a seated plastic holster on Flores's right hip. Officer Ignacio removed Flores's wallet from his pant pocket. Inside the wallet was Flores California driver's license. Officer Ignacio asked Flores if he still resided at the address listed "3057 Golden Avenue". Flores stated, "Yes." Also inside Flores's pant pocket was a black Samsung phone (Attachment A / Item 1).

Officer Ignacio escorted Flores to the back of his police vehicle and placed him in the backseat, seat belting him in for safety.

Officer Ignacio searched Flores's vehicle incident to arrest and discovered the following items:
Two high capacity loaded extended Glock magazines (25 capacity and 30 capacity)
One clear baggie containing a crystal-like substance believed to be methamphetamine.
Three glass pipes with white residue and char marks

One black metal asp

The vehicle was towed per PD tow to 3111 E. Willow in the City of Long Beach under tow section 22651(H) VC – Driver arrested.

Departmental resources confirmed that Flores has prior following felony convictions:

File Date: 03/24/2005

Case Number: XSONA06481301

Filed Charges: 245(A)(2) pc / 11370/1(A) HS

File Date: 02/28/2014

Case Number: LB NA09862501

File Charges: 29800(A)(1) PC / 11379(A) HS / 20002(A) VC

File Date: 02/03/217

Case Number: XSONA10562901

Filed Charges: 245(A)(4)PC

Officer Jackson transported Flores to W. Broadway to be booked as charged.

Officer Ignacio retained possession of the items until later placing them into evidence.

Based on the totality of the circumstances, information, evidence recovered and revealed during this investigation, and in light of my knowledge, training, and experience, I submit that probable cause exists that articles of evidence described above will be found in Attachment A. I now request a search warrant be issued for the search of these described locations, in good faith effort to locate and

recover the items of evidence pertaining to the aforementioned serious and potential on-going acts of the and illegal possession of firearms and narcotics.